295 N.J. Super. 165 (1996)
684 A.2d 970
TYRONE HURST, AN INFANT BY HIS GUARDIAN AD LITEM, RUBY HURST, AND RUBY HURST INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
GLOCK, INC. AND GLOCK, GES. M.B.H., DEFENDANTS-RESPONDENTS, AND LAWRENCE TOWNSHIP, BRYCE DOWERS, AND AISHAH DUKES, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1991.
Decided November 18, 1996.
*166 Before Judges MUIR, Jr., KLEINER and COBURN.
Mitchell J. Makowicz, Jr., argued the cause for appellants Tyrone Hurst and Ruby Hurst (Blume Goldfadden Berkowitz Donnelly Fried & Forte, attorneys; Mr. Makowicz, on the brief).
Steven Backfisch argued the cause for respondents Glock, Inc. and Glock, Ges.m.b.H. (Whipple, Ross & Hirsh, attorneys; Evan A. Burkholder (Mcguire Woods Battle & Booth, LLC) of the Virginia Bar, admitted pro hac vice, of counsel; Mr. Backfisch, on the brief).
The opinion of the court was delivered by COBURN, J.S.C. (temporarily assigned).
In this products liability case, the Law Division granted summary judgment to the remaining defendants Glock, Ges.m.b.H., *167 and Glock, Inc., the manufacturer and distributor, respectively, of the Glock semi-automatic, 9mm pistol in question. Plaintiffs appeal. We reverse.
The accident giving rise to this action occurred when a young girl, believing the pistol to be unloaded, pulled the trigger causing a bullet to enter the head of her friend, plaintiff Tyrone Hurst. Had the pistol contained a safety device known as a magazine disconnect, it would not have fired because the magazine had been removed. Defendants assert the absolute defense provided by Section 3a(2) of the New Jersey Products Liability Act of 1987 (the Act), N.J.S.A. 2A:58C-1 to -7, contending the harm was caused by an unsafe but inherent aspect of the product (its ability to fire a bullet after the magazine but not the chambered bullet has been removed) which would be recognized by an ordinary user. Plaintiffs rely on the second exception set forth in Section 3a(2) which precludes use of the defense when the danger "can feasibly be eliminated without impairing the usefulness of the product." On this record, we believe plaintiffs have established a question of fact to be determined by a jury.
Fifteen year old Tyrone Hurst was about to go to school on the morning of December 12, 1989, when his fourteen year old friend, defendant Aishah Dukes, arrived so they could walk together. As she stood in the kitchen of the Hurst home, Tyrone entered, carrying the Glock semi-automatic, 9mm pistol owned by his mother's boyfriend, defendant Bryce Dowers. Dowers, a police officer, had gone out earlier that morning, leaving behind the fully loaded pistol in its holster, completely unsecured. With Aishah watching, Tyrone removed the magazine from the pistol. He then took the bullets from the magazine and began lining them up on the kitchen table. Aishah picked the pistol up, pointed it at Tyrone, and pulled the trigger. A bullet entered Tyrone's head, causing catastrophic injuries. Until that tragic moment, Aishah believed the weapon was unloaded.
The Glock pistol had been issued to defendant Dowers by the Lawrence Township Police Department. This particular weapon *168 was chosen for the department in 1988 on the recommendation of a committee of police officers appointed by the Chief of Police. It was to replace the revolvers then in use. The Committee cited the following reasons for its choice: "1. Higher round capacity in the weapon. 2. Speed in reloading. 3. Easy to reload. 4. Carry more rounds in extra magazines." The lack of a magazine safety was not mentioned in the report. At most, defendants proved that it was a feature which the Committee had "taken into consideration." On the other hand, Officer Dowers did suggest during his deposition the following purpose for purchasing a semi-automatic pistol without a magazine disconnect:
Q. Which type of pistol did you prefer?
A. The Glock.
Q. Is that to say you preferred a pistol design that would still permit you to fire a round in the chamber even though the magazine for whatever reason, is removed?
A. Yes.
Q. Why?
A. For one simple reason: if you have a suspect at bay and he is armed, you can drop your magazine and still be able to fire at this guy with this one round that is left. With the other weapons you drop the magazine, you are done. You can't shoot until you reload.
There was no evidence with respect to the probability of a magazine dropping out of a pistol without manipulation by the operator. Nor was there any evidence to suggest that during a confrontation a police officer would remove a magazine before his pistol was empty.
Plaintiffs' expert prepared a report in which he stated the following:
The lack of a magazine safety is a serious design defect. All semi-automatic pistols should be designed with a magazine safety. This type of safety prevents the firing of the gun after and while the magazine is removed. Many users of pistols with removable magazines, think the gun is unloaded when the magazine has been removed. Unfortunately, the user may have forgotten about the round that may still be in the chamber ready to be fired. If the gun cannot be fired when the magazine has been removed, then this type of accident is prevented.
Magazine safeties have been a part of the `State of the Art' since the Browning patent application on 17 February 1910. (Patent No. 984,519 granted on 14 February 1911.) The importance of a magazine safety is clearly set out in Browning's patent as follows:

*169 `to insure absolutely against the dangerous accidental firing sometimes liable to occur if the trigger is pulled after the magazine has been withdrawn in the belief that all cartridges have been removed from the arm with the magazine, whereas the loaded cartridge last fed to the barrel still remains in the chamber.'

Note: Browning is credited with the design of the first mass produced semi-automatic pistol. The Browning Model 1000. His above patent comments are made in light of his previous experience.
Similar language can be found in a Colt patent application by Colt designer Tansley in 1916. (Patent No. 1,234,961 granted 21 July 1917.) The following is noted in that patent:
`This invention more especially relates to automatic small-arms and particularly to automatic pistols of this class, with which, as shown by experience, certain dangerous accidents are liable to occur, .... The dangerous accidents referred to are caused by the erroneous belief that after the removal of the cartridge magazine from its seat in the arm, the firing of the same becomes positively impossible; whereas in fact, a loaded cartridge may have been previously transferred from the magazine to the barrel of the arm and may still remain in the chamber of the same liable to be exploded if the trigger should by pulled even after the removal of the magazine. The object of the present invention is to always and positively prevent such accidental firing ...'
In 1924, Smith & Wesson introduced their .32 Automatic Model of a semi-automatic pistol. The gun was designed with a disconnector type of magazine safety. While this particular model was discontinued in 1937, every Smith & Wesson semi-automatic pistol model produced since their early entry into the field in 1924, has had a magazine safety. When the Smith & Wesson Model 41 pistol was introduced in 1957, General Julian Hatcher reviewed the new gun in the January 1958 issue of the American Rifleman magazine: `There is a magazine safety to prevent the gun being fired unless the magazine is in place, the idea being to prevent accidents caused by people thinking they have unloaded the gun when they have merely removed the magazine and left a cartridge in the chamber.'

The reasons for the importance of the magazine safety as pointed out in 1910, 1916, and 1958 are no less valid or important today. (A host of similar references are readily available.) Responsible firearms manufacturers and designers produce and design guns with this important device as one of the guns standard safety features.
Defendants contend they are protected from liability in this case by Section 3a(2) of the Act, which provides:
a. In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if:
* * * * * * * *
(2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person *170 who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this paragraph ... is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product....
This section of the Act has been definitively interpreted by the New Jersey Supreme Court in Roberts v. Rich Foods, Inc., 139 N.J. 365, 654 A.2d 1365 (1995):
[The manufacturer] bears the burden of proving the 3a(2) absolute defense: that the danger is open and obvious and that the harm was caused by an inherent and known characteristic of the product. [The plaintiff] then bears the burden of proving that, because [the manufacturer] could feasibly have eliminated the danger without impairing ... [the product's] usefulness, the 3a(2) defense in not available to ... [the manufacturer].
[Id. at 382, 654 A.2d 1365.]
The Court further observed:
[W]e hold that `impairing the usefulness of the product' means significantly diminishing its intended use. Even where it is economically and technologically feasible to eliminate the danger, section 3a(2) still provides a defense if eliminating the danger would require eliminating an inherent characteristic.
Thus, a plaintiff seeking to establish the second exception to the 3a(2) defense must prove that the defendant could have eliminated the danger without eliminating an inherent characteristic of the product, and thereby significantly diminishing the product's intended use. We emphasize, however, that a feature of a product that is desirable but not necessary is not an inherent characteristic: an inherent characteristic is an essential characteristic. The elimination of an essential characteristic might not render the product totally useless, but it would measurably reduce the product's appropriateness for its central function. We make one final observation about jury evaluation of the second exception to the 3a(2) defense: juries will inevitably weigh the extent to which the elimination of the inherent danger would improve a hazardous condition.
[Id. at 381-82, 654 A.2d 1365.]
In the present case, defendants contend that part of the intended purpose of their pistol is to fire the chambered bullet even if the magazine has been removed or has dropped out. They argue that feature increases the safety of a person who may be under threat of attack. While they concede that a magazine disconnect is technologically and economically feasible, their position is that its absence is not merely "desirable" but essential and that incorporating that particular safety device within the design of the *171 pistol "would measurably reduce the product's appropriateness for its central function." Ibid.
As in Roberts, supra, the problem with defendants' position is the lack of a record which would establish as a matter of law that incorporation of this safety device would have had the effect of "significantly diminishing the product's intended use." Id. at 382, 654 A.2d 1365. We have no way of knowing whether the fear expressed by Officer Dowers, that the magazine might become dislodged during a confrontation, is realistic or ephemeral. While the police department apparently considered this feature of the Glock pistol, there is no indication that the ability in question was considered important, or if so, how important. As previously noted, it was not one of the features even mentioned by the committee of police officers who surveyed the various guns available to the department. On the other hand, it appears from the report of plaintiffs' expert that incorporation of magazine safeties in semi-automatic pistols has been prevalent since the early 1900's. The specific purpose of the device is to avoid the kind of accident which occurred here. The central function of a pistol is self-defense. If magazines for semi-automatics never or rarely drop out, which may be the case as far as this record shows, arguably a semi-automatic pistol can perform that central function while at the same time providing far greater safety with the addition of a magazine disconnect. The matter is one to be decided not by a court as a matter of law, but by a jury.
Reversed and remanded for further proceedings.
KLEINER, J.A.D., concurring.
Although I agree with the opinion of my colleagues, I would emphasize that on remand, should defendants Glock, Inc. and Glock, Ges.m.b.H., renew their motion for summary judgment, that the trial court consider the inapplicability of N.J.S.A. 2A:58C-3a:
The statute reads in part:

*172 a. In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if:
(1) At the time the product left the control of the manufacturer, there was not a practical and technically feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the product; or
(2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this paragraph shall not apply to industrial machinery or other equipment used in the workplace and it is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product.

[Ibid. (emphasis added).]
Clearly the Glock semi-automatic, 9mm pistol was equipment owned by Lawrence Township and provided to Officer Dowers for his use as a police officer. As such, this particular weapon is equipment and the absolute defense set forth in N.J.S.A. 2A:58C-3a is not available to defendant. The fact that this gun was removed from the workplace while Officer Dowers was off-duty does not change its character as police equipment. The absolute defense in this statute simply does not apply to equipment.
For the above reason and for the reasons expressed in the majority opinion, I would reverse and remand this matter for trial.